## Ralph B. Goodrich v. United States Fidelity and Guaranty Company

[568 A.2d 385]

No. 87-540

Present: Peck, Gibson, Dooley and Morse, JJ., and Connarn, D.J. (Ret.), Specially Assigned

Opinion Filed October 6, 1989

*Phyllis G. Severance* and *Thomas E. McCormick* of *McNamara, Fitzpatrick & McCormick,* Burlington, for Defendant-Appellee Aetna Casualty & Surety Co.

*Harold E. Eaton, Jr.* and *Lawrence Miller* of *Miller, Cleary & Faignant, Ltd.*, Rutland, for Defendant-Appellant United States Fidelity & Guaranty Co.

*Peter B. Joslin* of *Theriault & Joslin, P.C.*, Montpelier, for Defendant-Appellant Hickock and Boardman, Inc.

**Gibson, J.** This appeal concerns a dispute among insurers over coverage for an indemnity claim brought by Vermont Gas Systems, Inc. (VGS) against the plaintiff-insured, Ralph B. Goodrich, Inc. (Goodrich). Defendants United States Fidelity and Guaranty Company (USF&G), Goodrich's primary insurer, and Hickock and Boardman, Inc. (H&B), the issuing agent, appeal a superior court order declaring that USF&G and H&B are responsible for plaintiff's contractual liability to VGS, and that defendant Aetna Casualty & Surety Company (Aetna), plaintiff's excess insurer, is not liable for any portion of the damages and fees paid by USF&G and H&B. We affirm.

## I.

In October of 1980, Goodrich, a water and sewer contractor, entered into a contract with the City of St. Albans to construct an interceptor sewer replacement near VGS underground gas mains. One of the provisions of the contract required Goodrich to obtain insurance policies to protect and save harmless "any utility company, railroad, other municipal corporation and/or the State of Vermont while work is being performed in their easement or property." Accordingly, Goodrich presented the contract to H&B, which then obtained a USF&G master insurance policy and an Aetna excess indemnity (umbrella) policy for Goodrich. Although at least one utility company was specifically mentioned in the USF&G policy, VGS was not a named insured in either policy.

In June of 1981, two of Goodrich's employees were severely injured when an explosion occurred near the VGS gas mains. The employees received workers' compensation benefits paid on behalf of Goodrich and then sued VGS. VGS, in turn, filed a third-party complaint against Goodrich, claiming negligence, interference with property rights, and implied indemnification.

USF&G accepted coverage for the negligence and implied indemnification counts, but reserved its right to decline coverage with regard to the interference claim by signing a nonwaiver agreement with Goodrich. VGS subsequently amended its complaint to add a count based on a theory of liability under the save harmless provision of the contract between Goodrich and the city. VGS claimed that it should have been provided with insurance protection by Goodrich under the terms of the contract with the city. USF&G answered the amended complaint, but entered into no new reservation-of-rights agreement.

Both USF&G and Aetna denied coverage of the claims based on the contract between Goodrich and the city. USF&G relied upon an endorsement that excluded coverage for any obligation arising out of a contract for a public authority in an action brought by a third-party beneficiary not engaged in the project. Aetna relied upon an endorsement that excluded coverage when there was no coverage in the underlying policy of the primary insurer, and also claimed that if the USF&G policy did provide primary coverage, Aetna was liable only for the excess.

In 1984, Goodrich brought a declaratory judgment action to resolve the conflicting claims among the various litigants. In January of 1985, VGS, Goodrich, USF&G, and Aetna entered into an agreement whereby USF&G and Aetna agreed to treat VGS as additional insured under the terms of their respective policies with Goodrich. USF&G and St. Paul's Insurance Company (H&B's insurer) then settled the underlying tort claims with the Goodrich employees within the USF&G policy limits and proceeded against Aetna.

Although the factual and procedural histories of this case are complex, the issues are straightforward. Essentially, USF&G and H&B argue that (1) the trial court erred in concluding that USF&G and H&B had agreed to provide primary coverage for Goodrich and VGS; (2) the USF&G policy did not cover VGS's contractual claims; and (3) the Aetna policy did cover VGS's contractual claims. We are asked to determine the significance of contractual language in the 1985 agreement and in certain provisions of the USF&G and Aetna policies.

## II.

USF&G and H&B first contend that the trial court erred when it determined that the 1985 agreement signed by USF&G, Aetna, Goodrich, and VGS (Agreement) amounted to an obligation on the part of USF&G to provide primary coverage for Goodrich's contractual obligation to VGS. The Agreement included the following language:

> The parties to this Agreement realize and understand that the claim has been asserted by Goodrich, VGS, and others, that VGS should be treated fully as if it had been named as an additional insured, with primary coverage under the USF&G policy, and likewise, therefore, as an additional insured with excess coverage above the USF&G policy under the Aetna (excess) policy. It is asserted that Hickok & Boardman, as agent for USF&G, should have specifically included VGS in the category of a named additional insured, based upon the underlying contractual agreements between Goodrich and the other parties involved in the so-called St. Albans Project. To date, Hickok & Boardman and/or its E & O carrier, has refused to indemnify or otherwise take over the defense on behalf of VGS, and therefore, USF&G agrees to defend VGS against the claims made by the plaintiffs in the Irish action, and USF&G and Aetna agree to indemnify VGS to the extent of and in accordance with the terms of the above-referenced/named policies of insurance. *USF&G likewise agrees to treat VGS as an additional insured with primary coverage under the terms of its policy, and Aetna likewise agrees to treat VGS as an additional insured with excess coverage, above the USF&G policy, under the terms of its policy.*

(Emphasis added.) Based on this language, the trial court found that Aetna was not liable to USF&G or H&B because USF&G had agreed to provide primary coverage for Goodrich and VGS, while Aetna had agreed to provide only excess coverage above the underlying policy amount, and there had been no excess payment.

USF&G and H&B argue that the trial court erred in assuming that the Agreement had redefined their position vis-a-vis the excess insurer, Aetna. They claim that the trial court erroneously rewrote the terms of the various policies by construing the Agreement to affect the obligations of the insurers among each other rather than the obligations of USF&G to the insureds, as was intended. In furtherance of this interpretation of the Agreement, USF&G and H&B characterize Aetna as merely an incidental beneficiary, pointing out that Aetna gave no consideration for its part in the Agreement. We cannot agree.

■ The terms of the Agreement are unambiguous. All parties agreed that Goodrich and VGS should be defended and indemnified in the underlying tort action. The parties further agreed to clarify the nature and extent of coverage provided by the various insurance policies. Pursuant to that goal, USF&G plainly accepted responsibility for primary coverage for obligations resulting from the Goodrich contract with the City of St. Albans, and plainly accepted the fact that Aetna would be responsible only for excess coverage above the underlying primary coverage. Despite USF&G and H&B's contentions, the trial court did not rewrite or even clarify the insurers' policy provisions—the parties themselves did that when they signed the Agreement. The court merely recognized the plain language of the Agreement. "The law presumes that the parties meant, and intended to be bound by, the plain and express language of their undertaking." *Roy's Orthopedic, Inc. v. Lavigne*, 145 Vt. 324, 326, 487 A.2d 173, 175 (1985). When contract language is clear, the parties are bound by the common meaning of the words chosen to reflect their agreement. *Id.*

Further, Aetna was a signed party to the Agreement, not an incidental beneficiary lacking consideration, as characterized by USF&G. All the parties to the Agreement recognized the need to indemnify Goodrich and VGS and to clarify their roles and obligations to each other. In essence, Aetna agreed to provide excess coverage contingent upon USF&G providing primary coverage. By agreeing to recognize VGS as an insured and to cover VGS for any loss in excess of USF&G's primary

coverage, Aetna benefited from USF&G's assumption of primary coverage, but also suffered a detriment in giving up its claim that no excess coverage could ever be paid because no primary coverage existed. In effect, Aetna gave good consideration when it gave up its right to deny excess coverage for damages stemming from the VGS-Goodrich contract. See *Howard National Bank & Trust Co. v. Newman*, 115 Vt. 61, 69, 50 A.2d 896, 901 (1947).

The Agreement also benefited USF&G by defining the obligations of the insurers so that a favorable settlement of the underlying claims might be reached with the insured. Both insurers appreciated the possibility that liability arising out of the accident would exceed USF&G's policy limits and, based on that knowledge, made an informed business judgment in an area where they had a great deal of expertise. Cf. *Horace Mann Ins. Co. v. Government Employees Ins. Co.*, 231 Va. 426, 429–31, 344 S.E.2d 906, 908–09 (1986) (excess insurer must contribute $15,000 to primary insurer despite fact that damages did not exceed primary insurer's policy limits, because excess insurer had agreed to contribute $15,000 upon primary insurer's settlement with insured). After the Agreement was signed, USF&G and St. Paul settled the underlying claims for well under the limits of the primary policy; therefore, Aetna was within its rights in refusing to contribute to the settlement.

USF&G cites two cases for the proposition that a settling insurer can recover from a nonsettling insurer where the nonsettling insurer has failed to fulfill its obligations to the insured. See *State Farm Mutual Automobile Ins. Co. v. Allstate Ins. Co.*, 255 So. 2d 667, 669 (Miss. 1971); *Liberty Mutual Ins. Co. v. General Ins. Corp.*, 517 S.W.2d 791, 796 (Tex. Ct. App. 1974). These cases are inapposite. In neither case, as herein, did the insurers involved in the dispute sign an agreement regarding their respective roles and obligations toward coverage for the insured. Furthermore, USF&G did not reserve its rights to proceed against Aetna in the Agreement despite the fact that it did reserve its rights to proceed against H&B.

Finally, with regard to the Agreement, USF&G cites *Brink & Co. v. Merchants & Mechanics Ins. Co.*, 49 Vt. 442 (1877), for

the proposition that insuring agreements should be construed in the way most favorable to the insured. The argument is specious for the following reasons: (1) *Brink* concerned an insurance policy between insurer and insured, not an agreement between insurers; (2) even insurance policies cannot be construed against the insurer if they unambiguously exclude coverage, *Noyes v. Order of United Commercial Travelers of America*, 125 Vt. 336, 338–39, 215 A.2d 495, 497 (1965); and (3) the Agreement was in fact intended to protect, and did protect, the insured.

■■ USF&G and H&B also argue that the trial court erred by focusing on the Agreement rather than by addressing their principal argument that the USF&G policy provisions preclude coverage, while the Aetna policy provisions require coverage. The trial court held that it was not necessary to construe the key USF&G and Aetna policy provisions because the parties had already agreed as to their obligations in regard to Goodrich and VGS. We agree. As noted above, the plain meaning of the language of the Agreement spells out the intent of the parties. The trial court's conclusions will be upheld if the findings of fact fairly and reasonably support them. *Rule v. New Hampshire-Vermont Health Service*, 144 Vt. 323, 325, 477 A.2d 622, 623 (1984). In the instant case, the trial court's conclusions easily meet this standard.

Our determination of the import of the Agreement obviates discussion of other issues raised by USF&G and H&B.

*Affirmed.*