## Highgate Associates, Ltd. v. Lorna Merryfield

[597 A.2d 1280]

No. 90-032

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 23, 1991

*George K. Belcher* and *Eric G. Parker*, Barre, for Plaintiff-Appellant.

*John J. McCullough III*, Vermont Legal Aid, Inc., Montpelier, for Defendant-Appellee.

**Dooley, J.** Plaintiff, Highgate Associates, Ltd., the owner of a federally subsidized housing project in Barre, appeals the trial court's ruling that the late charge provision contained in its lease agreements is void as an unenforceable penalty. We affirm.

Defendant, Lorna Merryfield, occupied an apartment in the project beginning in January of 1986. The lease contained the following provision:

> If the Tenant does not pay the full amount of the rent by the end of the 5th day of the month, the Owner may collect a fee of $5.00 on the 6th day of the month, the Owner may collect a fee of $1.00 for each additional day the rent remains unpaid during the month it is due. The owner may not terminate this Agreement for failure to pay rent charges, but may terminate this Agreement for non-payment of rent . . . . The charges herein discussed are liquidated damages, are not to be considered charges for the use or forbearance of money, are in addition to the regular monthly rent payable and are being incurred to cover administration costs caused by late rent payments.

Defendant was not a model tenant; her rent payments were late on numerous occasions, and by the time she had vacated her apartment in July of 1988, she had accrued late charges of $397. Plaintiff brought this action to recover unpaid rent, damages to the apartment, and the late charges. After an expedited hearing, the trial court awarded judgment to plaintiff on the unpaid rent and on part of the claimed damages. The court denied recovery on the late charges. On appeal, the sole issue is whether the trial court erred in concluding that the late payment provision was void as an illegal penalty.

We begin by emphasizing our limited standard of review in this matter. The trial court's findings of fact must stand unless they are clearly erroneous, viewing the supporting evidence in a light most favorable to the prevailing party and excluding the effect of modifying evidence. *Lawrence v. Pelletier*, 154 Vt. 29, 33, 572 A.2d 936, 939 (1990). A finding will not be disturbed merely because it is contradicted by substantial evidence; rather, an appellant must show there is no credible evidence to support the finding. See *Gokey v. Bessette*, 154 Vt. 560, 564, 580 A.2d 488, 491 (1990). Where the trial court has

applied the proper legal standard, we will uphold its conclusions of law if reasonably supported by its findings. *Goodrich v. United States Fidelity & Guaranty Co.*, 152 Vt. 590, 596, 568 A.2d 385, 389 (1989).

■ The ultimate test for the validity of a liquidated damages clause is whether the clause is reasonable under the totality of the circumstances. See *Wassenaar v. Panos*, 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983). We recently articulated three factors that should be considered in determining whether a contract provision is a reasonable liquidated damages clause rather than an unlawful penalty:

> [A] liquidated damages clause must meet three criteria to be upheld: (1) because of the nature or subject matter of the agreement, damages arising from a breach would be difficult to calculate accurately; (2) the sum fixed as liquidated damages must reflect a reasonable estimate of likely damages; and (3) the provision must be intended solely to compensate the nonbreaching party and not as a penalty for breach or as an incentive to perform.

*New England Educational Training Service, Inc. v. Silver Street Partnership*, 156 Vt. 604, 613, 595 A.2d 1341, 1346 (1991). These factors are not exclusive or necessarily conclusive. They do, however, provide a framework for the trial court's determination of whether a particular clause is reasonable. *Koenings v. Joseph Schlitz Brewing Co.*, 126 Wis. 2d 349, 361, 377 N.W.2d 593, 600 (1985).

While final determination of whether a liquidated damages provision is reasonable is a legal question for the trial court, evaluation of the three factors underlying that determination requires resolution of factual issues. See, e.g., *New York Life Ins. Co. v. Hartford Nat. Bank & Trust Co.*, 2 Conn. App. 279, 281, 477 A.2d 1033, 1035 (1984) ("The trial court found that all three conditions were met on the basis of the facts of this case. The facts found were not clearly erroneous."); *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809, 375 S.E.2d 222, 223 (1989) (while enforceability of liquidated damages provision is a question of law, trial court must make "tripartite inquiry" which "requires the resolution of questions of fact"); *Illingworth v. Bushong*, 297 Or. 675, 694, 688 P.2d 379, 390 (1984) (upholding ruling that clause was void as penalty

where "there was evidence . . . to support the findings of the trial judge on both criteria discussed above"). Accordingly, we give some deference to the trial court's final determination. *Wassenaar*, 111 Wis. 2d at 525, 331 N.W.2d at 361 ("because the trial court's legal conclusion, that is, whether the clause is reasonable, is so intertwined with the factual findings supporting that conclusion, the appellate court should give weight to the trial court's decision").

Applying these principles to the present case, we conclude that the trial court's findings on the three criteria were not clearly erroneous, and that its conclusion that the lease provision was an unenforceable penalty was supported by these findings.

The first factor concerns the difficulty of calculating or proving the damages that might follow from a breach. See *Borley v. McDonald*, 69 Vt. 309, 313, 38 A. 60, 61 (1897) (upholding clause where damages arising from breach are "entirely uncertain, and cannot be ascertained upon an issue of fact"). The record contains extensive evidence bearing on this factor. It shows that plaintiff's employees had considerable experience in handling late rent payments. Plaintiff's office manager and managing agent testified that they followed an established routine when a rent payment was more than five days late. Based on this evidence, the court found that the total cost to plaintiff in responding to a late-paying tenant, including both labor and administrative costs, is approximately ten dollars per month and does not depend on the amount of rent outstanding. Although plaintiff's managing agent testified that "costs are greatly increased if the rents are not in on a timely fashion," there was no evidence that plaintiff's expenses had ever exceeded ten dollars per month.

On the basis of the above evidence and findings, the court found that plaintiff's damages in case of breach were readily ascertainable. Although plaintiff argues that this finding is erroneous, we conclude that there was ample evidence to support it. See *Heikkila v. Carver*, 378 N.W.2d 214, 217 (S.D. 1985) ("we cannot say that the trial court clearly erred in finding that the parties were unable at the time the contract was made to determine prospectively what damages might arise in the event of breach").

Plaintiff argues that the finding is incomplete because it failed to consider lost interest income on the belated funds (or the cost of money to plaintiff). We are unpersuaded. Interest income can be readily calculated based on current interest rates.[1] See 5 A. Corbin, Corbin on Contracts § 1065 (1964); see also *Sybron Corp. v. Clark Hosp. Supply Corp.*, 76 Cal. App. 3d 896, 900, 143 Cal. Rptr. 306, 308 (1978) (liquidated damages for late payment not ordinarily enforceable because damages for delay are readily calculated at prevailing interest rate).

■ Plaintiff also maintains that the amount of damages stipulated in the lease was reasonable because it could have included attorney's fees the landlord might pay as a result of tenant's failure to make timely rent payments. But attorney's fees are ordinarily unrecoverable in the absence of special legal authority or the parties' specific agreement to include this expense. See *Myers v. Ambassador Ins. Co.*, 146 Vt. 552, 558, 508 A.2d 689, 692 (1986). There is no such specific provision in this lease, in which the lateness fee was said to cover "administration costs." We are unwilling to include in a reasonableness analysis attorney's fees which are neither recoverable as damages in the absence of a stipulation nor specifically provided for in the lease.

■ The evidence bearing on whether the damages are ascertainable is also relevant to the second factor, whether the stipulated charge was a reasonable forecast of likely damages. See *Joseph Schlitz Brewing Co.*, 126 Wis. 2d at 363, 377 N.W.2d at 600 (whether clause represents a reasonable forecast of harm is "intertwined" with the "difficulty of ascertainment" test). The uncontroverted evidence was that plaintiff's foreseeable damages do not exceed ten dollars per month. Even if we added interest to this calculation, as plaintiff argues, the total would

---

[1] Although we consider this argument, we note that the lease provision specifically states that the late payment charges "are not to be considered charges for the use or forbearance of money" and are "incurred to cover administration costs." Plaintiff did not ask for prejudgment interest in the trial court, and we offer no opinion on whether interest would have been available to it. See Reporter's Notes, 1981 Amendment to V.R.C.P. 54.

reach only twelve dollars per month.[2] The lease, however, provided for late charges of up to thirty dollars per month. This evidence supports a finding that the clause did not reflect a careful forecast of probable damages. See *Kirkland v. Allen*, 678 P.2d 568, 571 (Colo. Ct. App. 1984) (lease provision void as penalty where greatly disproportionate to presumed loss). In addition, the court could take into consideration the fact that the lateness charge was greatly disproportionate to plaintiff's actual loss in this case. *Wassenaar*, 111 Wis. 2d at 532, 331 N.W.2d at 364; Restatement (Second) of Contracts § 356 comment b (1981). There was no error in the trial court's finding that "the amount charged . . . has no relation to the damages the landlord would sustain if the lease agreement were breached."

The third factor requires the court to examine whether the parties intended the charge to compensate plaintiff for expenses incurred as a result of late rent payments, or to deter or penalize such payments. The evidence on this question was, at best, ambiguous. The lease states that "the charges herein discussed are liquidated damages." Plaintiff's managing agent testified, however, that the purpose of the clause was twofold: "to offset the costs of collecting rent . . . and as an incentive for the residents to pay their rent on time." Similarly, plaintiff's office manager testified that the lateness charge "is a penalty for paying the rent late and for the paperwork and stuff that is caused by the late payment."

We recognize that neither the description contained in the lease, nor that used by plaintiff's agents, is conclusive on plaintiff's intent in adopting the late charge. See *Joyce's Submarine Sandwiches, Inc. v. California Public Employees' Retirement System*, 195 Ga. App. 748, 750, 395 S.E.2d 257, 259 (1990) ("[w]hile [landlord's employee] repeatedly used the word 'penalty' in referring to the amount claimed as liquidated damages, it is plain that this was merely her own description, and not a reflection of the [lessor's] intent."). Nevertheless, the trial court was entitled to consider this evidence in reaching the conclusion that the purpose of the charge "appears to be to encourage the tenants to pay their rent on time." See *Milton Constr.*

---

[2] Defendant's monthly rent was $232. The legal rate of interest is twelve percent per annum or one percent per month. 9 V.S.A. § 41a(a). Thus, the interest on a month's delay in payment is $2.32.

*Co. v. State Highway Dep't*, 568 So. 2d 784, 789 (Ala. 1990); *Walter Implement, Inc. v. Focht*, 107 Wash. 2d 553, 558, 730 P.2d 1340, 1343 (1987); see also *Rattigan v. Commodore International Ltd.*, 739 F. Supp. 167, 169–70 (S.D.N.Y. 1990) (even where party describes provision as one for liquidated damages, courts have tended, in close cases, to construe as penalty rather than as liquidated damages). We cannot say that this finding was clearly erroneous.

■ Plaintiff further argues that we should uphold the lease provision in issue because it was included as a model lease provision in the United States Department of Housing and Urban Development (HUD) handbook for owners of federally subsidized section 8 housing. HUD's endorsement of the lease provision does not render it valid under Vermont contract law. We have no doubt that there are federally subsidized projects in the country where the lateness charge provisions are a fair approximation of collection costs and they meet general standards for liquidated damages clauses. Plaintiff is not entitled to adopt the model lease provision without tailoring the lateness charges to its own circumstances.

Finally, plaintiff asserts that the cases from other jurisdictions involving late-payment charges in residential leases all support the position that the provision in this case is a reasonable liquidated damages clause. Many courts have upheld the charges before them. See, e.g., *Krupp Realty Co. v. Joel*, 168 Ga. App. 480, 481, 309 S.E.2d 641, 643 (1983); *Nylen v. Park Doral Apartments*, 535 N.E.2d 178, 184 (Ind. Ct. App. 1989); *Clark v. Walker*, 225 Kan. 359, 368, 590 P.2d 1043, 1051 (1979); *Borne v. Wilander*, 509 So. 2d 572, 573 (La. Ct. App. 1987); *Maplewood Mgmt. v. Jackson*, 113 Misc. 2d 142, 146–48, 448 N.Y.S.2d 966, 970 (Dist. Ct. 1982). Others have struck them down. See, e.g., *Burstein v. Liberty Bell Village, Inc.*, 120 N.J. Super. 54, 57, 293 A.2d 238, 240 (1972); *Spring Valley Gardens Assocs. v. Earle*, 112 Misc. 2d 786, 787, 447 N.Y.S.2d 629, 630 (County Ct. 1982); *Hankin v. Armstrong*, 113 Misc. 2d 24, 24–25, 451 N.Y.S.2d 334, 335 (Sup. Ct. 1981). None of these cases evince the specific analysis of the trial court's decision here; most rely on the absence of evidence on one of the factors. We find none of them helpful to our analysis.

*Affirmed.*