**Matthew Rubin, et al. v. Sterling Enterprises, Inc., et al.**

[674 A.2d 782]

No. 94-480

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 5, 1996

Motion for Reargument Denied February 1, 1996

---

*Richard I. Rubin* of *Rubin, Kidney, Myer & DeWolfe,* Barre, for Plaintiffs-Appellees.

*William A. Hunter,* Cavendish, for Defendants-Appellants.

**Gibson, J.** Defendants Sterling Enterprises, Inc. and Floryan Lohutko appeal from both a jury verdict awarding plaintiffs damages for defamation and a judgment in plaintiffs' favor following a bench trial. We affirm.

On February 17, 1986, the parties entered a lease agreement under which plaintiffs rented land for the purpose of constructing and

operating a hydroelectric facility. In November 1991, defendants demanded an additional $40,791 in rent and reimbursements because plaintiffs had failed to: (1) clean up rock and other construction debris at the site that would cost defendants $10,791 to remove; (2) preserve a turbine, with an estimated value of $10,000, which plaintiffs had removed from an abandoned powerhouse during construction; and (3) pay defendants 50% of additional revenues, amounting to $10,000 per year, from alleged increased operations at the facility in 1988 and 1989. When plaintiffs did not pay, defendants sent a notice of default to the Marble Bank, which held a mortgage on the project worth almost $1,000,000.

Plaintiffs thereupon commenced a libel action, alleging that defendants' defamatory default notice caused the bank to raise the interest rate on plaintiffs' loan. Defendants counterclaimed for the $40,791 allegedly owed by plaintiffs, and for an additional $10,000 in revenues from alleged increased operations in 1990.

Plaintiffs' defamation claims, together with defendants' counterclaims for the cleanup costs, the lost turbine, and the 1988 and 1989 surplus revenues, were tried to a jury in Washington Superior Court. The jury rendered a verdict in favor of plaintiffs for $46,000 and awarded nothing on defendants' counterclaims. Defendants' counterclaim for the 1990 surplus revenues was thereafter tried to the court, which issued findings of fact and conclusions of law, and entered judgment for plaintiffs. The court denied defendants' motions for judgment notwithstanding the jury's verdict and for reconsideration of the court's judgment with respect to the 1990 revenues. The court granted plaintiffs' motion to amend the judgment to include prejudgment interest in the amount of $1,633.

## I.

■ With respect to the jury trial, defendants claim that the court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict. Motions for judgment notwithstanding the verdict raise substantially the same questions as motions for directed verdict and are treated alike. *Center v. Mad River Corp.*, 151 Vt. 408, 411, 561 A.2d 90, 93 (1989). Both motions require a consideration of the evidence in the light most favorable to the prevailing party, excluding the effect of any modifying evidence. *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 292, 576 A.2d 441, 446 (1990). The motions should be denied if the record contains any evidence that fairly and reasonably supports the verdict. *Id.*

## A.

■ Defendants first contend that the lease authorized them to report any default to the Marble Bank, and that such a communication was a business privilege that could not support plaintiffs' defamation action as a matter of law. We disagree. We have acknowledged a defendant's right to raise a "conditional privilege for the protection of its legitimate business interests." *Id.* at 293, 576 A.2d at 446; see *Lent v. Huntoon*, 143 Vt. 539, 548-49, 470 A.2d 1162, 1169 (1983). Once the defendant proves the existence of the privilege, however, the plaintiff may overcome the protection of the privilege by providing clear and convincing evidence of malice. *Crump*, 154 Vt. at 293, 576 A.2d at 447. A plaintiff may demonstrate malice by showing that the defendant engaged in conduct manifesting personal ill will or reckless or wanton disregard of the plaintiff's rights, or conduct carried out under circumstances evidencing insult or oppression. *Id.* The court may also "infer malice upon a showing that the defendant knew the statement was false or acted with reckless disregard of its truth." *Lent*, 143 Vt. at 549, 470 A.2d at 1169.

Defendants cite section 17 of the lease agreement in support of their claim to a business-interest privilege. That section allows the lessor to declare a default if the lessee "fail[s] in any of the agreements of [the] lease," and requires the lessor to provide the lessee and all lienholders with written notice of the alleged default. The trial court properly instructed the jury that defendants had a conditional privilege when it sent the default notice to the bank and that, to award any damages, the jury must first find that plaintiffs had overcome the privilege by showing at least an inference of malice.

Viewed in the light most favorable to plaintiffs, the evidence at trial supports at least an inference of malice in each of defendants' statements to the Marble Bank. Defendants first stated that plaintiffs had failed to preserve a preexisting turbine, valued at $10,000, on the powerhouse site. The evidence indicated, however, that the turbine had no value, even as scrap, well before plaintiffs' tenancy commenced. The turbine, manufactured in the 1920s, had been severely corroded from having been half-submerged in water for over thirty years, and had been stripped of all usable or valuable parts. The evidence also showed that plaintiffs carefully attempted to remove the turbine from the powerhouse, but that the turbine disintegrated upon being disturbed. Plaintiffs promptly informed Lohutko of the turbine's loss, and Lohutko assented to the burial of the fragments on the property.

Defendants also stated that plaintiffs were in default of the lease after refusing to clean up boulders and other construction debris, with resulting damages estimated at $10,791. It was undisputed at trial that the 1986 lease was silent concerning plaintiffs' obligation to clean up construction debris. At trial, the evidence showed that Lohutko had observed the debris in 1986 and had asked plaintiffs to preserve it for his future reuse or resale.

Finally, defendants stated that plaintiffs had failed to remit additional rent resulting from increased operating revenues. Section 3(b) of the lease requires the lessee to pay the lessor fifty percent of the available cash flow resulting from "expansion of maximum productivity beyond the capacity of the project as originally constructed pursuant to Exhibit 'B.'" According to defendants, the project "head," that is, the distance between the headwater and the tailwater, increased from 19.6 feet to 20.9 feet during plaintiffs' tenancy, and the plant's turbine capacity increased from a proposed level of 350 kw to 400 kw, creating additional revenues that should have been shared under section 3(b). Viewed in the light most favorable to plaintiffs, however, the evidence showed that Lohutko's original license application to the Federal Energy Regulatory Commission (FERC) indicated a project head of 19.6 feet, and that Lohutko testified that nothing had been done to the physical structure of the dam to increase the size of the head. The evidence also showed that the project was built on a single Ossberger turbine, which has a capacity of 350 kw at the induction generator. Lohutko's FERC application stated, however, that the original capacity of the project was 400 kw. Testimony at trial confirmed that one turbine operating at 350 kw could produce 400 kw of plant capacity as measured at the utility interconnect point.

■ The evidence, therefore, fairly and reasonably tended to show that defendants knew that each of their statements to the Marble Bank was false or that they acted with reckless disregard of the truth, thereby supporting an inference of malice sufficient to overcome defendants' conditional business privilege. *Crump*, 154 Vt. at 293, 576 A.2d at 447.

■ Defendants argue, however, that the jury could not have found clear and convincing evidence of malice, because the jury declined to award punitive damages, which require a finding of malice by a preponderance of the evidence. We disagree. Punitive damages may be awarded, in the jury's discretion, upon a finding of actual malice

rather than implied or constructive malice. *Lent*, 143 Vt. at 550 n.3, 470 A.2d at 1170 n.3. The jury's decision not to award punitive damages is not determinative of an absence of any inference of malice.

Defendants also claim, for the first time on appeal, that their communication to the Marble Bank should have been entitled to an absolute privilege. This claim was not raised before the trial court and is thus not preserved for our review. *Dunning v. Meaney*, 161 Vt. 287, 292, 640 A.2d 3, 6 (1993).

## B.

Defendants further argue that there was insufficient evidence for the jury to find that defendants' acts caused plaintiffs' higher interest payments. They allege that plaintiffs voluntarily renegotiated their mortgage agreement with the Marble Bank and agreed to pay a higher rate of interest on their loan. Here again, we consider the evidence in the light most favorable to the prevailing party, excluding the effect of any modifying evidence, to decide whether the record contains any evidence that fairly and reasonably supports the verdict. *Crump*, 154 Vt. at 292, 576 A.2d at 446. The record reflects that in April 1991, approximately six months before defendants issued their default notice, the bank decided to renew plaintiffs' loan. In the process of approving that renewal, the bank received defendants' default notice and raised the interest rate on the loan by one percent because it believed there was additional risk to the credit. The evidence thus supports the jury's determination that defendants' default notice did cause harm to plaintiffs.

## II.

Defendants contend that the trial court erred when it allowed the jury to consider a February 17, 1986 lease that did not include a September 16, 1986 addendum. Defense counsel did not object when plaintiff introduced the February 17 lease, but indicated that he intended to review the lease to determine whether it was complete. Counsel had ample opportunity to inspect the lease during trial and to offer the September 16 addendum in evidence. Because defendants failed to object or to offer the addendum, we do not reach their claim of error.

## III.

With respect to the bench trial on defendants' counterclaim for alleged 1990 surplus revenues, defendants contend that the

evidence did not support the court's findings of fact or conclusions of law. Our standard of review in such matters is limited. *Highgate Assocs. v. Merryfield*, 157 Vt. 313, 315, 597 A.2d 1280, 1281-82 (1991). Factual findings are viewed in the light most favorable to the prevailing party, disregarding modifying evidence. *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994). We will not disturb a finding even if it is contradicted by substantial evidence, unless there is no credible evidence to support the finding. *Highgate Assocs.*, 157 Vt. at 315, 597 A.2d at 1281. Where the trial court has applied the proper legal standard, we will uphold its conclusions if they are reasonably supported by its findings. *Id.* at 316, 597 A.2d at 1281-82.

Defendants made the same argument to support their claim for 1990 revenues that they had made during the jury trial on their claims for 1988 and 1989 revenues, namely, that the project head had increased from 19.6 feet to 20.9 feet, and that the turbine capacity had increased from 350 kw to 400 kw, thereby generating additional revenues that plaintiffs were obliged to share with defendants under the terms of the lease. Defendants presented no evidence, however, that warranted a result different from that arrived at by the jury. The trial court found no evidence of increased operations, but rather found that, at all relevant times, the project head was 19.6 feet and the turbine capacity was 400 kw. The court therefore concluded that defendants were not entitled to recover any additional revenues from plaintiffs. We see no basis to overturn the court's findings or its conclusions.

Defendants contend, however, that the trial court abused its discretion when it denied their motion for reconsideration. They argue that the court's unwillingness to hold a hearing and review new evidence submitted with the post-trial motions left it unable to assess the misleading nature of plaintiffs' expert testimony.

A motion to amend judgment allows the trial court to revise its initial judgment if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party. V.R.C.P. 59(e); *In re Kostenblatt*, 161 Vt. 292, 302, 640 A.2d 39, 45 (1994). Although generally favored, hearings are not mandatory for V.R.C.P. 59 motions, particularly where the moving party has failed to show prejudice from the lack of a hearing. *Jewell v. Dyer*, 154 Vt. 486, 488, 578 A.2d 125, 126-27 (1990). Disposition of a Rule 59 motion is committed to the court's sound discretion. *Kostenblatt*, 161 Vt. at 302, 640 A.2d at 45.

■ In the instant matter, the evidence proffered by defendants in their post-trial motions concerned the credibility and reliability of plaintiffs' expert witness. Defendants had ample opportunity to elicit this evidence at trial. Their failure to do so was not attributable to the mistake or inadvertence of the court, and the court did not abuse its discretion in refusing to hear this evidence in defendants' post-trial motion.

## IV.

Defendants claim that the court erred in awarding prejudgment interest to plaintiffs. In Vermont, an award of monetary relief "shall include the principal amount found to be due [and] all interest accrued on that amount up to and including the date of entry of judgment." V.R.C.P. 54(a). Defendants argue that the court should have discounted costs that had yet to be incurred by plaintiffs, rather than awarding interest on such costs. Defendants did not, however, oppose plaintiffs' request for prejudgment interest, object to the jury instructions regarding damages, or raise their discounting issue at any time during the trial. Consequently, this issue was not properly preserved for our review. *Dunning*, 161 Vt. at 292, 640 A.2d at 6.

*Affirmed.*