2003 VT 76

**In re TOWN HIGHWAY NO. 20 OF THE TOWN OF GEORGIA**

[834 A.2d 17]

No. 02-389

¶ 1. July 23, 2003. Defendant Town of Georgia (the Town) and intervenors Gregory and Janet Bechard (Intervenors) appeal from a superior court decision ordering the Town to allow petitioner John Rhodes (Petitioner) to improve and maintain a section of Town Highway #20 (TH #20) and ordering Intervenors to remove all personal property they had stored in that section of the TH #20 right of way. Intervenors separately appeal from denial of their cross-claim that they had acquired title to an acre of Petitioner's land by adverse possession and had acquired a prescriptive easement over a road, called the "Pent Road," through Petitioner's property. On appeal, the Town and Intervenors make several procedural and substantive claims. We affirm.

¶ 2. The first part of this dispute revolves around the border between Petitioner's farm and Intervenors' farm, both located in the Town of Georgia. Much about this border is disputed, including whether TH #20 constitutes a portion of this border. Intervenors claim that the road does not abut Petitioner's property because it runs to the south, not to the north, of Intervenors' house. The trial court, however, found that a 600-foot section of TH #20 formed a border between the northwest corner of Intervenors' property and the southeast portion of Petitioner's property, finally meeting with Bradley Hill Road to form a "T" intersection.

¶ 3. On June 10, 1970, the selectboard of the Town decided to hold a hearing on whether to discontinue a portion of TH #20 and legally reclassify that section from a town highway to a trail.* At the hearing, held on June 30, 1970, the selectboard considered the proposed reclassification. Ten months later, on May 10, 1971, the selectboard voted to reclassify a portion of TH #20 as a trail. Intervenors claim that the portion of TH #20 at issue in this case was exactly that part of TH #20 that was reclassified. The trial court, however, found many discrepan-

---

* Because trails are not highways, towns are not responsible for maintaining trails, including trail culverts and bridges. 19 V.S.A. § 302(a)(5).

cies between the selectboard's reclassification order and the actual portion of TH #20 in dispute, stating that "the 1971 order does not describe an existing section of TH #20." Additionally, the Town was required to give notice of the hearing to all persons owning or interested in land abutting the highway — which included Petitioner's father, H.C. Rhodes, who owned the farm at the time — via registered mail. 19 V.S.A. § 531 (1968), *repealed by* 1985, No. 269 (Adj. Sess.). The parties dispute whether or not Petitioner's father received proper notice, although the superior court found that he had not.

¶ 4. In 1995, Petitioner formally asked the selectboard to determine the location of TH #20 in the southeastern area where it abuts his farm and requested that the Town reconsider the 1971 selectboard reclassification of the road as a trail. He also sought permission to make improvements to the roadway in order to allow vehicles to safely cross TH #20 from Bradley Hill Road and to make the road safe for transit over rock ledges located in the TH #20 right of way. Additionally, Petitioner sought an order requiring Intervenors to remove the fenced gate they had erected in the middle of TH #20 and the old farm equipment and wood they had stored in the highway right of way that blocked access to the Pent Road. On April 18, 1997, the selectboard denied all of Petitioner's requests.

¶ 5. Petitioner then appealed the decisions of the Town of Georgia selectboard to the Franklin County Superior Court, pursuant to 19 V.S.A. §§ 34 and 740. Intervenors sought and were granted leave to intervene. On June 26, 2002, the superior court found that TH #20 was legally laid out in 1813 and that the reclassification in 1971 was void. The court also found that the selectboard had acted unconstitutionally in denying Petitioner's requests and ordered the Town to allow Petitioner to improve TH #20 and to direct Intervenors to remove their personal property from the road. Intervenors and the Town appealed the trial court's decision and the Town filed a cross-appeal.

¶ 6. We first address Intervenors' claims. Intervenors' first claim on appeal is that the trial court erred in finding that the portion of TH #20 that runs along the northwestern border of their property was laid out in 1813 in compliance with the then-applicable law. Intervenors claim that the law in effect at the time TH #20 was laid out was a 1782 law that required a highway to be laid out by "chain and compass." See "An Act Directing the Laying Out of Highways," Oct. 21, 1782, *reprinted in* 13 *State Papers of Vermont* 129-30 (J. A. Williams ed., 1965). Intervenors charge that because the original surveyors described the highway in "rods and degrees," and not "chain and compass," they did not substantially comply with the statute in effect at the time and thus never officially created a highway. From this proposition they argue that TH #20 should be laid out to the south of their house, and not to the north. We disagree.

¶ 7. We have difficulty understanding why Intervenors' argument should lead to the conclusion that TH #20 should be located to the south of their house, rather than to the north. Nevertheless, for purposes of this appeal, we will address the merits of their argument. The trial court held that because "chains" refers to a measurement of four rods and degrees are determined by a compass, the description of the highway substantially complied with the statute, and thus TH #20 was correctly laid out in 1813. We agree with the superior court that the highway was correctly laid out in 1813. We find, however, that the governing law when TH #20 was laid out was an 1808 law, not the 1782 law cited by Intervenors. That 1808 law required "every highway or road which shall in future be laid out or opened, shall be actually sur-

veyed ... ascertaining the breadth, course and distance of such road." 1 Laws of Vermont, ch. XLV, § 1, at 446 (1808); see also *Kelly v. Town of Barnard*, 155 Vt. 296, 302, 583 A.2d 614, 618 (1990) (in 1816 and 1817, the procedure for establishment of a public highway was governed by 1 Laws of Vermont, ch. XLV, § 1). Because TH #20 was described in rods and degrees, a measurement that conveys the "breadth, course, and distance" of the highway, it was properly laid out in 1813. We do not need to determine whether "rods and degrees" is equal to "chain and compass" because the applicable law in 1813 does not require a measurement in chain and compass. See *Samplid Enters. v. First Vt. Bank*, 165 Vt. 22, 28, 676 A.2d 774, 778 (1996) (this Court may affirm a lower court judgment where the right result was reached for the wrong reason).

¶ 8. To the extent that Intervenors' claim is more generally that the trial court was incorrect in finding that TH #20 was laid out to the north and not the south of their house, we reject that claim. The trial court's findings of fact stand unless they are clearly erroneous. *Highgate Assocs. v. Merryfield*, 157 Vt. 313, 315, 597 A.2d 1280, 1282 (1991). There was sufficient evidence for the lower court to determine that the correct layout of TH #20 is to the north of Intervenors' house. At least two surveyors testified that the road runs to the north of Intervenors' house. Additionally, a 1948 United States Geological Survey Map and other aerial maps and photographs taken in 1941, 1962, and 1996 show the road to be located to the north of Intervenors' house. Accordingly, we uphold the court's finding that TH #20 constitutes the northwestern border of Intervenors' land and the southeastern border of Petitioner's land.

¶ 9. Intervenors' second claim on appeal is that the trial court erred in finding that the portion of TH #20 at issue was improperly discontinued in 1971.

Intervenors argue that the selectboard substantially complied with the applicable statutory requirements to discontinue highways in that proper notice of the hearing was given to the required parties and that the discontinued portion of the road was sufficiently described. We disagree.

¶ 10. When purporting to discontinue or reclassify a highway, a town must substantially comply with the statutory method for discontinuance or the resultant change will be void. *In re Bill*, 168 Vt. 439, 442, 724 A.2d 444, 446 (1998). We presume actions taken by a selectboard within the scope of its duties to be in accordance with statutory requirements. *Id.* However, when a selectboard acts outside its statutory authority, it acts without jurisdiction and consequently its proceedings are void and may be impeached at any time. *Id.*

¶ 11. The lower court found that the 1971 selectboard did not substantially comply with the statute, based on three factual findings. First, the trial court found that Petitioner's father — who owned the land in 1971 — did not receive the statutorily required notice of the 1971 hearing to discontinue TH #20. Second, the court found that the 1971 vote to discontinue the highway took place ten months after the hearing, not within the sixty days that the statute required. See 19 V.S.A. § 711 (recodifying the former 19 V.S.A. § 344 (1968)).

¶ 12. Finally, the court found that the 1971 selectboard order discontinuing a portion of TH #20 did not describe an existing section of TH #20. The portion of TH #20 that was discontinued was described in the minutes of the 1971 hearing as beginning at a point .34 of a mile west of the intersection of Town Highway #10 and TH #20. TH #20, however, does not intersect with TH #10. The court also found that the section of TH #20 that was described in the notice of intention to discontinue was different from that referred to in the May 10, 1971

vote to discontinue. The notice described the section of TH #20 to be discontinued as the portion between the Intervenors' farmhouse and that of Hosanna Montcalm. Montcalm's farmhouse was not .34 miles west of the intersection with either of the two roads, TH #3 and TH #27, that intersect with TH #20.

¶ 13. We need not address two of the grounds on which the trial court found lack of substantial compliance — the lack of notice to Petitioner's father and the running of the time limit for taking action — although we note our holding in *Haynes v. Lassell*, 29 Vt. 157, 160 (1857), that discontinuance of a highway may not be collaterally attacked on the ground that the abutter did not receive notice of the proceeding. We conclude that the court's decision was justified by its finding that the description of the section that the selectboard arguably downgraded does not include the portion of TH #20 between the land of Petitioner and Intervenors and that the description of the section proposed to be downgraded is not consistent with the description of the section the selectboard voted to downgrade. We recognize Intervenors' argument that we should accept the Town zoning administrator's testimony that the selectboard meant TH #3, rather than TH #10, in describing the road with which TH #20 intersects. The trial court, however, may credit or reject this testimony, and the court rejected it. See *Highgate Assocs.*, 157 Vt. at 315, 597 A.2d at 1282. Where the trial court has applied the correct legal standard and the conclusions are reasonably supported by the factual findings, those conclusions of law will be upheld. *Id.* at 315-16, 597 A.2d at 1281-82. Here, the trial court properly found that there was no effective discontinuance of the road in the area in dispute. See *Capital Candy Co. v. Savard*, 135 Vt. 14, 16-17, 369 A.2d 1363, 1365-66 (1976) (public use of a highway is effectively discontinued only when certain statutory procedures are followed).

¶ 14. Intervenors also attack the trial court's finding that TH #20 was improperly discontinued in 1971 on the grounds that Petitioner's claims were barred by the statute of limitations and the equitable doctrine of laches. Intervenors claim that at the time of reclassification the statute allowed Petitioner twenty days to appeal the highway reclassification and Petitioner's failure to appeal within that time resulted in a bar by the statute of limitations. Intervenors further assert that Petitioner is also barred by the doctrine of laches for waiting twenty-six years to appeal the decision. They claim that the trail classification of the abutting road is favorable for their property, and that their use of the road for storage is sufficient prejudice to prove laches. We find no merit to either claim.

¶ 15. The holding of *Bill*, 168 Vt. at 442, 724 A.2d at 446, is that a discontinuance decision that does not substantially comply with the statutory requirements is void and can be attacked at any time. This Court likened the lack of statutory compliance to a lack of subject matter jurisdiction, *id.*, and allowed a challenge to a 1926 decision to discontinue a road. Here, there is another reason to reject Intervenors' argument that Petitioner has taken an untimely appeal. The trial court ruled that the discontinuance decision did not, by its terms, cover the section of TH #20 in dispute. Thus, Petitioner's father did not suffer an adverse decision from which he should have appealed.

¶ 16. "Laches is the failure to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right. Laches does not arise from delay alone, but from delay that works disadvantage to another." *Stamato v. Quazzo*, 139 Vt. 155, 157, 423 A.2d 1201, 1203 (1980) (internal citations omitted). Intervenors made no requests in the lower court that it make a finding with respect

to laches, and no findings were made, including any finding with respect to prejudice. "It is our long standing rule that this court should not put the lower court in error when the latter was not afforded the opportunity of considering and acting upon the issue itself." *Laird Props. New England Land Syndicate v. Mad River Corp.*, 131 Vt. 268, 282, 305 A.2d 562, 570 (1973). Thus, we reject Intervenors' claim for laches at this stage.

¶ 17. We turn now to the arguments made by the Town. In its brief, the Town explicitly states that it does not join the Intervenors' claims on appeal. The Town's sole contention is that it did not unconstitutionally discriminate against Petitioner, as the trial court found. Once we affirm the trial court's decision that the disputed portion of TH #20 is a highway, however, the Town asserts its willingness to comply with this Court's decision and fully accept the trial court's order, including allowing Petitioner to improve and maintain TH #20, and ordering Intervenors to remove all of their personal property from the TH #20 right of way. Because we uphold the trial court's classification of TH #20 as a highway, and the Town is willing to abide by the superior court's order, we do not reach the constitutional issue.

¶ 18. Finally, we turn to the cross-appeal issues raised by Intervenors. Intervenors claim that the court erred in failing to find that they established their claim to a one-acre piece of land on the southeastern corner of Petitioner's property through adverse possession and that they established a prescriptive easement over the Pent Road. We reject both claims.

¶ 19. We are uncertain of the exact nature of Intervenors' adverse possession claim. During Petitioner's testimony, Intervenors' lawyer asked him if he claimed ownership of a one-acre area just north of the TH #20 right of way near Intervenors' house. Petitioner answered that he did not. The court asked Intervenors' lawyer to pursue the issue, but all he did was establish that his clients claimed ownership of the area and Petitioner did not. Although there is no indication of how and why Intervenors claimed ownership, the issue has been posed to us as one of adverse possession.

¶ 20. To claim property by adverse possession, Intervenors must have established open, notorious, hostile, and continuous possession of the property for fifteen years. 12 V.S.A. § 501; *Lawrence v. Pelletier*, 154 Vt. 29, 33, 572 A.2d 936, 939 (1990). Intervenors have the burden of proving these elements. *Bemis v. Lamb*, 135 Vt. 618, 621, 383 A.2d 614, 617 (1978). As the trial court found, Intervenors never established the elements of adverse possession for the fifteen-year period. Petitioner's cryptic testimony that he does not claim ownership of the one-acre area does not prove these elements. The only consistent evidence of adverse possession was Intervenors' occupation of a portion of the TH #20 right of way, which belongs to the Town rather than Petitioner; land that is held by a municipality for public use, however, is exempt from claims of adverse possession. 12 V.S.A. § 462; *Jarvis v. Gillespie*, 155 Vt. 633, 641-43, 587 A.2d 981, 986-87 (1991). Intervenors may indeed own the one-acre area, as Petitioner apparently concedes, but they have failed to obtain a proper adjudication of their ownership right in this litigation.

¶ 21. The prescriptive easement claim deals with the Pent Road. From 1971 to 1994, Petitioner had access to the upper section of his property via the Pent Road that extends north over his property from the intersection of Bradley Hill Road and TH #20. The Town agreed to install a large culvert under the Pent Road near TH #20 in 1971, which made it possible for tractors and vehicles to access a gravel pit on Intervenors' property at the end of the Pent Road. With Petitioner's permission, Intervenors used the

Pent Road to reach their gravel pit from 1973 to 1994. In 1994, apparently not long after Petitioner expressed interest in subdividing his property, Intervenor Gregory Bechard's father — who owned the farm at the time — requested that the Town remove the culvert. The culvert was subsequently removed by the Town on the order of Town Selectman Stephen Bechard, brother of Intervenor Gregory Bechard. Without the large drain, it was impossible to drive vehicles from Bradley Hill Road up the Pent Road. After the culvert removal, Petitioner refused to allow Intervenors to cross his property. Intervenors, however, did instruct a contractor to use the Pent Road to access their property after 1994, without Petitioner's permission.

¶ 22. The elements necessary to establish a prescriptive easement are essentially the same as those for adverse possession. *Cmty. Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt. 152, 155, 559 A.2d 1068, 1070 (1989). The trial court found that Intervenors used Petitioner's Pent Road, over which they claim a prescriptive easement, with the permission of the Petitioner. Use of the road by permission is not adverse unless there has been a repudiation "either made known expressly to the owner or clearly indicated by unequivocal actions." *In re Estate of Smilie*, 135 Vt. 217, 220, 373 A.2d 540, 543 (1977). Additionally, use since 1994, even if adverse, is not sufficient to establish a prescriptive easement because use for less than fifteen years does not fulfill the statutory time requirement. 12 V.S.A. § 501; *Cmty. Feed Store*, 151 Vt. at 155, 559 A.2d at 1070. Thus, Intervenors' claim to use of the Pent Road through prescriptive easement fails.

*Affirmed.*

Motion for reargument denied September 19, 2003.