STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
Environmental Division Unit                           Docket No. 35-3-13 Vtec

| N.E. Materials Group Amended A250 Permit |
|---|

## ENTRY REGARDING MOTION

Count 1, Act 250 District Commission Decision (35-3-13 Vtec)

Title:          Motion to Amend/Alter (Motion 14)
Filer:          North East Materials Grp., LLC
Attorney:    James P.W. Goss
Filed Date:  March 21, 2016

Response filed on 04/05/2016 by Attorney Laura Bucher Murphy for party 2 Co-counsel
        Opposition

Reply to Response filed on 04/18/2016 by Attorney James P.W. Goss for NEMG

**The motion is GRANTED IN PART and DENIED IN PART.**

Pending before the Court is a motion filed by Applicant North East Materials Group, LLC (NEMG) to alter our final merits decision in the case of In re North East Materials Group Amended A250 Permit. In response to the motion, Appellants in this matter, a group of twenty-six neighbors collectively known as "Neighbors for Health Communities," also argued for an altered judgment, but on different bases.

The underlying matter is an appeal from a district commission decision granting an Act 250 permit to NEMG to operate a hot-mix asphalt plant on the Rock of Ages[1] quarry tract in Barre, Vermont (the Project). The District 5 Environmental Commission granted the Act 250 permit in February 2013, but limited asphalt production to an average of 4,500 tons per week during any given 45-day period (a "rolling average production limit"). Neighbors appealed the District Commission's decision, seeking denial of the permit. NEMG cross-appealed, challenging the rolling average production limit. NEMG continued to operate its asphalt plant under the district commission permit while the appeal was pending.

The Court issued a decision on the merits on March 11, 2016. In our decision, we approved NEMG's application, subject to three conditions. One condition required that, "[w]hen using public roads, trucks associated with the Project will remain in their lane of travel at all times, including when traveling on the sharp curve in Graniteville Road at the intersection of Graniteville Road and Baptist Street." We also interpreted a stipulation the parties filed before trial to waive NEMG's challenge to the rolling average production limit in its permit. Our decision noted, however, that even if the rolling average production limit were within our

---

[1] The Rock of Ages Corporation is a co-applicant in this appeal.

scope of review, we would maintain the limit because our positive findings under several Act 250 criteria were based on observed impacts from the Project while the production limit was in place. See In re N.E. Materials Grp. A250 Permit, No. 35-3-13 Vtec, slip op. at 2 n.3 (Vt. Super. Ct. Envtl. Div. Mar. 11, 2016).

In its motion to alter judgment, NEMG objects to the lane-of-travel condition and the perceived waiver of its challenge to the rolling average production limit. NEMG asks the Court to remove the lane-of-travel condition, arguing that the Court does not have jurisdiction to impose this condition and that the condition is unenforceable. As to the rolling average production limit, NEMG argues that the stipulation was never meant to waive the production-limit issue and that the project complies with Act 250 without the limit. In their response, Appellants also take issue with the lane-of-travel condition, arguing that the condition is "meaningless." They urge the Court to require NEMG's customers to avoid the HCL curve altogether.[2] With regard to the rolling average production limit, Appellants agree that the pre-trial stipulation was not meant to waive the production-limit issue, but they urge the Court to continue to impose the condition.

A party may move to alter or amend judgment within ten days of the judgment's issuance. V.R.C.P. 59(e). Rule 59(e) gives a court broad power to alter or amend a judgment. See V.R.C.P. 59(e), Reporter's Notes. A court may "revise its initial judgment if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." Rubin v. Sterling Enters., Inc., 164 Vt. 582, 588 (1996).

With regard to the lane-of-travel condition, the Court **DENIES in part** NEMG's motion to alter and maintains the condition as written. A tribunal reviewing an Act 250 application has the power to impose "appropriate" conditions that are an "allowable proper exercise of the police power." 10 V.S.A. § 6086(c). Conditions are generally valid under this provision if they are "reasonable." See In re Quechee Lakes Corp., 154 Vt. 543, 549 n.4 (1990). A reviewing tribunal has "broad authority to tailor permit conditions to reduce the environmental impacts of proposed projects." In re J. Philip Gerbode, No. 6F-357R-EB, Findings of Fact, Conclusions of Law, and Order, at 9 (Vt. Envtl. Bd. Mar. 26, 1991).

Reviewing tribunals frequently impose conditions that relate to the behavior of parties not before the court, especially when those conditions relate to traffic. See e.g., In re Hannaford Bros. Co. & Southland Enters., Inc., No. 4C0238-5-EB, Findings of Fact, Conclusions of Law, and Order (Altered), at 26 (Vt. Envtl. Bd. Nov. 27, 2002) (imposing condition that applicant's customer's forklifts and delivery trucks adhere to noise emission standard). While it would pose due process concerns if we were to attempt to penalize those third parties for their behavior, where the consequences attach to the permittee, the condition is properly imposed on "the project."

NEMG argues that this condition is unenforceable, and we may not impose "unenforceable" permit conditions, citing In re Old Vermont Wood Products., No. 5W 1305-EB, Findings of Fact, Conclusions of Law, and Order, at 16 (Vt. Envtl. Bd. Aug. 19, 1999). In Old Vermonter, the Environmental Board rejected a proposed permit condition because the condition was so vague an enforcement agency would not be able to tell if it had been violated.

_____

[2] Appellants also suggested that the Court should order NEMG to re-site the Project. We will not consider this suggestion because such a revision would fundamentally alter the proposed project, and likely require remand. See In re Lathrop Ltd. P'ship, 2015 VT 49, ¶ 99.

Id.  Here, an enforcement agency will have no difficulty enforcing the Court's condition: if a truck passes over the road's centerline, the condition will be violated.

When NEMG argues that the condition is unenforceable, it is really arguing that it is "un-compliable" to ensure compliance because NEMG does not have the legal power to control its customers' truck drivers.  But NEMG can ensure that its customers do not violate the condition through contracting with customers,[3] just as applicants frequently must ensure compliance with their permits by controlling the behavior of independent contractors on their site.  For instance, NEMG could require that its customers not use tractor-trailer-sized trucks, since the evidence showed that dump trucks have no difficulty staying in their lane.  Or it could require that, if its customers use tractor trailers, those larger trucks use different access routes so the trucks don't pass through the HCL at all.[4]  The Court would have the power to impose either of these requirements as conditions of the permit.  By imposing the lane-of-travel condition, the Court gives Applicant more flexibility and control in determining the manner of compliance.  As the Environmental Board has frequently said when it imposes conditions involving parties not before the Board: "Applicant, or its successors in interest, are responsible for complying with the conditions . . . .  The method by which the permit holder achieves compliance is not of concern to the Board."  In re Liberty Oak Corp., No. W0496-EB-1, Findings of Fact, Conclusions of Law, and Order, at 5–6 (Vt. Envtl. Bd. Jan. 14, 1988).[5]

Appellants argue that the lane-of-travel condition is meaningless because state law already requires vehicles to remain in their lane of travel.  The Court disagrees.  While state law already requires this, the condition adds new penalties, new enforcement mechanisms, and new incentives to comply with existing law.  Thus, the condition is not duplicative or meaningless.

Turning to the rolling average production limit, both parties agree that the pre-trial stipulation was not meant to remove the production-limit issue from our scope of review.   To prevent injustice, we **GRANT in part** NEMG's motion and will alter the merits decision to show that NEMG did not waive its challenge to the rolling average production limit, and to examine whether the Project complies with Act 250 the more permissive limit—180 tons per hour—that NEMG proposes.

For reasons explained more fully in the altered Merits Decision that accompanies this entry order, we conclude that truck noise from the Project does not comply with Criterion 8 with only a 180-ton-per-hour production limit.  We acknowledge that the sound-modeling evidence NEMG submitted at trial demonstrated hourly Leq sound levels from truck traffic based on an assumed limit of 180 tons per hour.  Nonetheless, loud truck noises (measured in

---

[3] At NEMG's hot-mix asphalt plant, "asphalt is manufactured on an as-needed, per-truck-load basis." In re N.E. Materials Grp. A250 Permit, No. 35-3-13 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Mar. 11, 2016).  NEMG therefore presumably has communication with its customers before delivery, and therefore has the ability to control some aspects of transport though contract.

[4] There are two proposed access points to the Project: a northern access point on Graniteville Road and a southern access point on Pirie Road.  Trucks leaving the site through the southern access point would approach Lower Graniteville via Baptist Street.  At Baptist Street's junction with Graniteville Road, trucks coming from Baptist Street would drive straight to continue onto Graniteville Road, and would not have to navigate the sharp curve in Graniteville Road.  Though the southern access point is not yet open, NEMG could open the access point and require customers to use this point.

[5] NEMG has also suggested that the lane-of-travel condition would enable an angry customer to jeopardize its permit by intentionally crossing over the centerline on the HCL curve.  This is not a credible scenario, since the Natural Resources Board, which has exclusive power to enforce Act 250 permits, see In re Treetop Dev. Co. Act 250 Dev., 2016 VT 20, ¶ 13, has sound enforcement discretion.

Lmax, not Leq) would occur substantially more frequently without a rolling average production limit, and, at their theoretical maximum, would cause undue adverse aesthetic impacts. We therefore conclude that the rolling average production limit is necessary to control aesthetic impacts from truck noise under Criterion 8.

An altered Merits Decision reflecting the above changes accompanies this entry order.

**So ordered.**

Electronically signed on April 18, 2016 at 10:54 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

<u>Notifications</u>:
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Pamela Austin
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Russell Austin
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Julie Barre
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Suzanne Bennett
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Jane Berard
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Lori Bernier
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Marc Bernier
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Charles Brown
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Melyssa Danilowicz
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Michael Danilowicz
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Cathy DeGreenia
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Forrest DeGreenia
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Earl Everhart
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Cynthia Fitzgerald
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Kaley Grenier
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Kirt Johnson
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Victoria Johnson
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Steve Martin
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Frederick McGrath
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Gustave Osterberg
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Rock Pariseau
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Dana Robinson
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Ricky Safford
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Padraic Smith
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Suzanne Smith
Laura Bucher Murphy (ERN 5042), Attorney for Appellant Denise Viens-Kirkpatrik
Elizabeth Lord (ERN 4256), Attorney for Interested Person Agency of Natural Resources

Gregory J. Boulbol (ERN 1712), Attorney for Interested Person DO NOT USE Natural Resources Board
James P.W. Goss (ERN 1997), Attorney for Cross Appellant North East Materials Grp.LLC Interested Person Barre Housing Authority
Elaine O'Grady (ERN 5799), Attorney for party 28 Co-counsel
Alan Philip Biederman (ERN 1015), Attorney for party 31 Co-counsel
James P.W. Goss (ERN 1997), Attorney for Cross Appellant Rock of Ages Corp.
Megan O'Toole (ERN 5149), Attorney for party 28 Co-counsel