STATE OF VERMONT
ENVIRONMENTAL COURT

|                                       |   |                          |
|---------------------------------------|---|--------------------------|
|                                       | } |                          |
| **In re: Leiter Subdivision Permit**  | } | **Docket No. 85-4-07 Vtec** |
| **(Appeal of Stimson)**               | } |                          |
|                                       | } |                          |

## Decision and Order on Pending Motions

This appeal arises out of a decision of the Development Review Board ("DRB") of the Town of Woodstock granting Appellee-Applicants James and Suzanne Leiter's application to subdivide their 16.96-acre lot into two lots. Appellant William P. Stimson appealed that decision to this Court. Appellant Stimson appears and represents himself. Applicants are represented by Kaveh S. Shahi, Esq.

On January 2, 2008, we granted Applicants summary judgment on Questions 1, 2, and 3 of Appellant's Statement of Questions, dismissed Question 4, and denied summary judgment to all parties on Questions 5 and 6. In re: Leiter Subdivision Permit, Docket No. 85-4-07 Vtec, slip op. at 12 (Vt. Envtl. Ct. Jan. 2, 2008) ("January 2 Decision"). We now have before us several additional motions for our consideration. Applicants have renewed their motion for summary judgment on Questions 5 and 6. Appellant opposes their motion. Appellant has also moved for summary judgment "vacating" the DRB decision and remanding to the DRB for additional proceedings. In the alternative, Appellant has also moved for reinstatement of Questions 1, 2, and 3. Appellant has also filed a motion in limine that seeks to prevent Applicants from offering into evidence or referring to an Agency of Natural Resources ("ANR") permit that was recently issued to them. We will consider these motions in turn.

## Factual Background

For the purposes of these motions only, the following facts are considered undisputed unless otherwise noted.

1. As noted above, we granted summary judgment in Applicants' favor on Questions 1, 2, 3, dismissed Question 4, and denied summary judgment to all parties on January 2, 2008. January 2 Decision at 12. The January 2 Decision contained a thorough recitation of the undisputed material facts. Id. at 1-2. We recommend review of that Decision and its Factual Background section to place this Decision in context.

2. Applicants own an approximately 16.96-acre lot located at 27035 Church Hill Road in Woodstock. The lot is located in the Residential Five Acre Zoning District ("R-5 District").

3. Appellant owns property adjacent to Applicants' land, also in the R-5 District.

4. Appellant and Applicants disputed the location of their shared boundary. This dispute was recently resolved by a Stipulation for Judgment in the Windsor Superior Court. Stimson v. Leiter, Docket No. 233-3-07 Wrcv (Vt. Super. Ct. May 5, 2008).

5. By that Stipulation, the parties agreed that "a certain survey prepared by Farnsworth Surveys entitled 'Lands Surveyed for Leiter, Church, & Carlton Hill Rd.' dated January 24, 2007 does not accurately depict the boundary between the parties[,]" and that "a certain survey prepared by Holt Surveys entitled 'Lands of William P. Stimson, Church Hill Rd.' dated July 9, 2007 accurately depicts the boundary between the parties." Id.

6. A copy of the "Farnsworth Survey" has been submitted to this Court as Exhibit 5 to the Second Affidavit of William P. Stimson.

7. A copy of the "Holt Survey" has been submitted to this Court as Exhibit 4 to Appellant's Statement of Undisputed Facts, filed with the Court on June 2, 2008.

8. Applicants submitted a subdivision application to the DRB on February 15, 2007. This application would create two lots. According to the application, one would contain 10.94 acres, and the other would contain 6.02 acres.[1] The larger lot would be northerly of the small lot, and the larger lot would also share the once-disputed boundary with Appellant's land, which lies easterly of the once-disputed boundary. Appellant's Exhibit 5 to the Second Affidavit of William P. Stimson.

9. The DRB considered Applicants' subdivision application at a public hearing held March 27, 2007. January 2 Decision at 2.[2]

10. On March 30, 2007, the DRB approved Applicants' subdivision application. See Appellant's Notice of Appeal Ex. 1 (containing a copy of the March 30, 2007 DRB decision approving Applicants' application) ("DRB Decision"). The DRB Decision contained one condition on its approval, that if the survey Applicants had submitted proved to be incorrect, they must submit a new subdivision application.

---

[1] Because of the result of the boundary dispute proceedings, Appellant contests that the subdivision lots will contain 10.94 and 6.02 acres.

[2] On the same day, prior to the hearing, Appellant filed his action in the Windsor Superior Court. January 2 Decision at 2.

2

11. On March 26, 2007, the Department of Environmental Conservation issued Applicants Wastewater and Potable Water Supply Permit #WW-3-1300 ("WW Permit"). See Appellant's Exhibit 8 to the Second Affidavit of William P. Stimson (containing a copy of the WW Permit). There is no indication in the record, nor have the parties argued, that this permit decision has been appealed. We therefore regard it as a final determination.

12. The WW Permit was not offered for consideration during the March 27, 2007 DRB hearings on Applicants' subdivision application.

13. Portions of Applicants' lot contain steep slopes and shallow soil areas. Compare Appellant's Statement of Undisputed Facts ¶¶ 11–12 (filed June 2, 2008) (explaining that the steep slope and shallow soils areas are detailed on Exhibits 10 and 11 attached to this Statement of Facts) with Applicants' admission to those facts in their Opposition Statement of Facts at ¶¶ 11–12 (filed June 19, 2008) (not disputing the steep slopes and shallow soils assertion).

### Appellant's Motion to Reinstate Questions 1, 2, and 3

Appellant has moved that the Court "reinstate," or otherwise resurrect for determination on the merits, Questions 1, 2, and 3, for which we granted Applicants summary judgment on January 2, 2008. Though not titled as a Motion for Reconsideration or as a Motion to Alter or Amend Judgment, this motion resembles a motion made under V.R.C.P. 59(e). See V.R.E.C.P. 5(a)(2) (the Vermont Rules of Civil Procedure, so far as applicable, govern appeals of this type in our Court). Though Appellant's motion was styled as a motion to reinstate, it is substantively indistinguishable from a motion under Rule 59(e), and we will therefore consider it as such. See Fournier v. Fournier, 169 Vt. 600 (1999) (mem.) (noting a motion's caption is not determinative of the application of V.R.C.P. 59(e)).[3]

Rule 59(e) provides that "[a] motion to alter or amend [a] judgment shall be filed not later than 10 days after entry of the judgment." Such a motion "allows [a] trial court to revise its initial [determination] if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." Rubin v. Sterling Enters., Inc., 164 Vt. 582, 588 (1996). Disposition of a Rule 59(e) motion is committed to the sound discretion of this Court. Id. These motions "may not be used to

---

[3] There is one procedural fact that distinguishes Appellant's motion from a conventional Rule 59 motion: we have not yet entered a final judgment on the pending application. Nonetheless, since our January 2 Decision rendered a conclusive determination on Appellant's Questions 1, 2 and 3, we believe that a Rule 59 analysis of Appellant's pending motion is appropriate.

relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1 (construing the analogous federal rule). These motions may be used to "correct manifest errors of law or fact" that the judgment is based upon, to prevent manifest injustice, to allow the moving party to present newly discovered or previously unavailable evidence, or to respond to an intervening change in the controlling law. Id.

Applicants note that Appellant's motion came nearly five months after our January 2 Decision, and urge that the motion be denied for being untimely. While denying Appellant's late-filed motion is within our authority under Rule 59(e), we choose to exercise the discretion the Rule proves us to address the substance of Appellant's numerous concerns regarding our January 2 Decision.

Questions 1, 2, and 3 focused on the boundary dispute, now resolved, that had been pending in the Windsor Superior Court as we considered the earlier cross-motions for summary judgment. The basic issue contained in Questions 1 and 2 revolved around the propriety of a subdivision application being considered while one of its boundary lines is being disputed.

As we noted in the January 2 Decision, an applicant bears the burden of showing evidence of title or some interest in the property to be developed. See January 2 Decision at 4 (collecting cases). Also, "[o]nce some evidence has been put forth on an applicant's interests and right to develop the property, 'further claims to title, or claims attacking the same must go to the appropriate Superior Court.'" Id. at 4-5 (quoting Appeal of Monty, Docket Nos. 7-1-04 Vtec and 47-3-04 Vtec (Vt. Envtl. Ct. Jan. 24, 2006)); and see 4 V.S.A. § 1001(b) (enumerating this Court's subject matter jurisdiction, which does not include property or boundary disputes). Appellant contended then, as he does now, that the cloud created by the boundary dispute negated Applicants' demonstration of control or title, thereby also negating their ability to receive a subdivision permit for this property.

Question 3 asked a related question: whether submission of an incorrect survey or map would be fatal to Applicants' subdivision application under § 710 to the Town of Woodstock, Vermont Zoning Regulations ("Regulations").[4] Section 710(A) lists a range of standards to

---

[4] As we noted in the January 2 Decision, § 710 lists the applicable provisions for approval of this subdivision, as major subdivisions such as this one are listed as conditional uses in the R-5 District. Regulations § 302(D).

4

which a proposed subdivision in the R-5 District must either conform or not adversely affect, including:

> (1) The capacity of existing or planned community facilities[;] (2) The character of the area affected[;] (3) Traffic on roads and highways in the vicinity[;] (4) By-laws then in effect[;] (5) Utilization of renewable energy resources[;] (6) In addition, the [DRB] shall find that the proposed use and/or structure adequately meets such specific standards with respect to: (7) minimum lot size[;] (8) Distance from adjacent or nearby uses[;] (9) Minimum off-street parking and loading facilities[;] (10) Landscaping and fencing[;] (11) Design and location of structures and service areas[;] (12) Size, location, and design of signs[;] (13) Access and circulation

Our examination of all three questions centered on the effect that a Superior Court decision in Appellant's favor could have on the pending subdivision application and whether the application could be approved under the Regulations.  January 2 Decision at 4-9.

Appellant contended then, as now, that any cloud over Applicants' property, including the then-existing boundary dispute, prevents them from having sufficient control over the property to submit their application and also acts to prevent approval under Regulations § 710. Regarding the § 710 issue, that section does not speak directly to boundary dispute questions or to what level of interest or ownership one must have to subdivide.  Appellant has not demonstrated how a changed boundary line would, under these facts, affect the analysis under § 710(A).  There was no dispute that even if Appellant succeeded in the Superior Court proceedings, the revision to the parties' shared boundary line would have no material impact upon our analysis under § 710(A).  We granted summary judgment to Applicants because a changed boundary line would have no effect upon the criteria considered under § 710, which does not concern itself with the metes and bounds of an applicant's lot.  In short, Appellant failed to show us how his boundary dispute was material to our review of the pending subdivision application under the Regulations.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material."); see also In re: Murphy Revocable Trust, Docket No. 47-2-05 Vtec, slip op. at 8-9 (Vt. Envtl. Ct. Apr. 28, 2006) (explaining that where boundary line adjustment impacted none of the criteria under which an application was reviewed, the boundary line adjustment was not material).  We therefore decline to alter or amend our January 2 Decision on Question 3.

Moreover, the boundary dispute was not material to the consideration of whether Applicants had satisfied their burden of showing some interest in the property to be subdivided.

5

We focused on whether Applicants have shown sufficient interest in the property to submit the application they wish us to approve. As we discussed, Applicants have shown that they have an interest in and control over the property they wish to subdivide. January 2 Decision at 5. Through the result in the boundary dispute proceedings, Appellant suggests that we should hold that Applicants' subdivision application cannot be approved because Applicants were in error regarding their boundary line when the DRB reviewed their application. However, Appellant has not explained how, under the Regulations, the boundary dispute is fatal to our review of this application. Question 3 and the § 710 issue stand as an example. Appellant has not referred us to a provision of the Regulations, properly preserved for our review, which requires perfect presentation of the lot's boundaries to the DRB. Appellant has not demonstrated that the boundary dispute, and Appellant's victory in the Windsor Superior, is a material fact. Therefore, we decline to alter or amend our January 2 Decision on Questions 1 and 2.

Were we to adopt Appellant's reasoning, every revision to a land use application, including revisions that did not materially impact upon the criteria upon which the application was being reviewed, would require an applicant to begin again. We refuse to adopt this logic, as it has no legal basis in the Regulations or applicable precedent.

Accordingly, Appellant's motion to alter or amend the January 2 Decision, styled as a Motion for an Order Reinstating Appeal Questions 1, 2, and 3, is **DENIED**.

### Cross-Motions for Summary Judgment; Appellant's Motion in Limine

Applicants have renewed their Motion for Summary Judgment on Questions 5 and 6 of Appellant's Statement of Questions. Those two questions ask whether Applicants' subdivision application should be denied for failure to address provisions of the Regulations related to development on lots with either "steep slope characteristics" or "shallow soil characteristics." These provisions are found in Regulations § 403(B) and (C). Similarly, Appellant has moved for "summary judgment vacating the March 30, 2007 decision of the [DRB]…and the permit issued thereon to [Applicants], and remanding [this] case to the [DRB] for further proceedings."[5]

Section 403 explains the requirements that must be met for development in the Conservation District, which is an overlay zoning district under the Regulations. The purpose of

---

[5] Appellant's motion is titled "Appellant's Motions for Summary Judgment Vacating [DRB] Decision and Remanding for Further Proceedings, or, in the Alternative, for an Order Reinstating Appeal Questions 1, 2, and 3, and Granting in Limine Relief." We consider this a motion for summary judgment on Questions 5 and 6, a motion in the alternative for in limine relief, and a motion to alter or amendment judgment, which is discussed supra.

6

the Conservation District is "[t]o protect natural areas and their inherent values from adverse development." Those natural areas include areas with "steep slopes, shallow and wet soils, wetlands, and streams." Regulations § 401(A). Overlay districts regulations, including those that govern the Woodstock Conservation District, contain requirements "in addition to" the requirements of the underlying zoning district and "take precedence over" the underlying district requirements when there is a conflict. Id. at § 402. We are directed to "evaluate the immediate and long range impact of [a] proposed use of the resource." Id.

Section 403(B), entitled "Steep Slope," provides that "[l]ots with steep slope characteristics as identified in the overlay zone shall be reviewed by the appropriate board for suitable sewage disposal, access for emergency vehicles, drainage, and erosion controls." Section 403(C), entitled "Shallow Soils," provides that "[l]ots with shallow soil characteristics as identified in the overlay zone shall be reviewed for suitable sewage disposal systems, and erosion control if warranted." Applicants, who do not dispute that their lot contains steep slopes and shallow soils, have submitted the affidavit of engineer Michael J. Willis and the WW Permit with their motion to support their argument that their proposed subdivision meets the requirements of § 403(B) and (C). Mr. Willis asserts through his affidavit that he has examined Applicants' lot, concludes that it is suitable for sewage disposal, and states that there will be no adverse environmental effects, such as erosion. Affidavit of Michael J. Willis at ¶ 2. The WW Permit contains no factual findings. It explains that Applicants' subdivision project has been approved and contains 19 conditions of approval.

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any…show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). A motion for summary judgment must be accompanied by a "separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." V.R.C.P. 56(c)(2). These statements "shall contain specific citations to the record." Id.

All doubts and inferences will be resolved in favor of the non-moving party. Johnson v. Harwood, 2008 VT 4, ¶ 5. However, the party opposing summary judgment may not "rest on bare allegations to demonstrate that disputed material facts remain" for a hearing on the merits. Id. Lastly, "failure to respond to a motion for summary judgment does not result in automatic

summary judgment" for the moving party; the Court must satisfy itself that the motion and materials supporting it are "both formally and substantively sufficient to show the absence of a fact question' and that the moving party is entitled to judgment as a matter of law." In re: Higgins-Jockey Lane Subdivision Final Plat, Docket No. 200-8-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Sept. 28, 2007) (quoting Miller v. Merchant's Bank, 138 Vt. 235, 238 (1980)) (internal quotations omitted).

At the outset, Appellant makes a jurisdictional challenge to our consideration of the WW Permit and Mr. Willis's affidavit in determining whether summary judgment should be granted on Questions 5 and 6. Appellant insists that because neither the WW Permit nor Mr. Willis's affidavit were submitted to the DRB, we "should consider neither the ANR Permit not [sic] the Willis Statement in determining the merits of this appeal." Appellant notes the maxim that "the reach of [this Court] in zoning appeals is as broad as the powers" of the DRB, but not broader. In re Torres, 154 Vt. 233, 235 (1990). We note also that "whatever the [DRB] might have done with an application properly before it, [this Court] may also do if an appeal is duly perfected." Id. at 236. Thus, for example, if the DRB did not have the authority to convert a permitted use application into a hearing on a conditional use permit, neither may we. Id.

Appellant contends that if we consider evidence not presented to the DRB, we both violate the rule of Torres and deprive him of his right as an interested person to offer his input on this application. In addition, for these reasons, Appellant seeks in limine relief, preventing Applicants from offering the WW Permit at trial, should the motions for summary judgment be denied. We believe that Appellant has misinterpreted Torres and does not appreciate the distinct nature of de novo proceedings.

Appellant makes a subtle argument regarding our jurisdiction and ability to consider matters not necessarily presented to a municipal planning tribunal. In a de novo proceeding such as this, this Court's role is to apply the standards that were applicable before the tribunal appealed from and to hear the appealed-from application anew, as though no prior action had been taken. 10 V.S.A. § 8504(h), V.R.E.C.P. 5(g); and see In re: Gizmo Realty/VKR Assocs., LLC, Docket No. 199-9-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Apr. 30, 2008) (Durkin, J.) (explaining that a de novo hearing "contemplates an entire trial similar to the proceedings from which the appeal arose"). However, this does not grant us broad authority to reconsider every aspect of a project or application; we are limited to considering those aspects that have been

8

properly preserved for our review by an appellant's statement of questions. See, e.g., In re: Jackson Subdivision ROW Access, Docket No. 195-9-07 Vtec, slip op. at 6 (Vt. Envtl. Ct. July 8, 2008) (citing Torres, 154 Vt. at 235-36) (Durkin, J.); and see Simendinger v. City of Barre, 171 Vt. 648, 651 (2001) ("Thus, the court [is] empowered to address only those matters properly considered by the City's planning commission and board of adjustment."). Thus, we have two competing rules to consider when examining our subject matter jurisdictional limitations. Our review is plenary, but only on those questions properly presented for our review.

Appellant's jurisdictional challenge appears to be premised upon assertions that consideration of the WW Permit and Mr. Willis's Affidavit allows Applicants to amend their application, and that the Court thus exceeds its jurisdictional mandate by considering an application never before the DRB. We disagree. The focus of the Torres line of cases has been a change in the very nature of the application, not a change in the evidence offered on appeal in support of the same application that was reviewed below. See, e.g., Torres, 154 Vt. at 234-36 (in a municipal appeal, it was error for the trial court to allow an application to be changed from a home occupation to conditional use application); Appeal of Baker and Johns, Docket No. 200-10-04 Vtec, slip op. at 4 (Vt. Envtl. Ct. Sept. 27, 2005) (Durkin, J.) (disallowing consideration of a PUD application where only a subdivision application had been warned at the municipal level), aff'd sub nom. In re Appeal of Baker and Johns, No. 2006-364 (Vt. Sup. Ct. May 16, 2007) (unpublished mem.); Perini Road Quarry, Docket No. 264-12-05 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 28, 2006) (Durkin, J.) (refusing to consider issues as significant as site plan review not first addressed by an appropriate municipal panel); Murphy Revocable Trust, Docket No. 47-2-05 Vtec, slip op. at 7 (Vt. Envtl. Ct. Apr. 28, 2006) (Durkin, J.) ("Examples of such material changes include changes to the nature of the approval being sought"); and In re: Appeal of Chamberlin, Docket No. 123-7-04 Vtec, slip op. at 5 (Vt. Envtl. Ct. May 31, 2005) (Wright, J.) (refusing to consider an appeal of an advisory interpretation request as a request for a home occupation zoning permit).

Recognizing that the land use permitting process must allow for some flexibility, and that it is a rare application that will not include some amendments made in response to neighbors' concerns, we have declined "to interpret Torres as an absolute barrier to that necessary evolutionary process in permit proceedings." Murphy Revocable Trust, Docket No. 47-2-05 Vtec, slip op. at 7 (Vt. Envtl. Ct. Apr. 28, 2006) (Durkin, J.). Our jurisdictional mandates do not

preclude us from considering relevant and admissible evidence when deciding whether an application meets the substantive standards for approval. Our authority extends to evidence that was not presented to the appropriate municipal panel below, but is presented to this Court during its <u>de novo</u> merits hearing on the same application that was once before the municipal panel. In fact, we have searched and found no authority that would allow us to prohibit such evidence from our <u>de novo</u> merits hearing.

The <u>Torres</u> precedent precludes us from considering an application that is different from the one presented to the appealed-from tribunal. The application before us in this appeal has not changed. Rather, Applicants have given notice that they intend to present additional evidence in support of their subdivision application. We know of no authority to prohibit the introduction of the Leiter WW Permit or the Willis Affidavit at trial and decline to grant Appellant's request to do so now.

Appellant makes several additional objections to Applicants' summary judgment motion. He first argues that Applicants' application cannot be approved, and possibly ought not be considered, because Applicants' "application papers are inadequate" for failing to address the requirements in Regulations § 403(B) and (C). Appellant's Memorandum of Law Submitted in Opposition to [Applicants'] Renewed Motion for Summary Judgment at 12 (filed July 3, 2008) (Appellant's Opp. Mem.). Appellant argues that Applicants failed to supply the appropriate materials to the DRB with their application and should not now be allowed to rely upon such evidence in their quest for summary judgment. See also Regulations § 708 (explaining the proper form of an application and the materials that must accompany it). Appellant also argues that the submission of Mr. Willis's affidavit and the WW Permit do not alone satisfy all of the requirements for approval under § 403(B) and (C). Appellant's Opp. Mem. at 21.

As noted, Mr. Willis's affidavit discusses only his opinion regarding suitability for sewage disposal and possible erosion problems. Regulations § 403(B) requires the Court to analyze not only those issues, but also emergency vehicle access and drainage issues for steep slope areas. To the extent that Appellant asserts that these form an appropriate basis for summarily denying the pending application, we disagree. Viewing these facts in a light most favorable to the Applicants, <u>Johnson v. Harwood</u>, 2008 VT 4, ¶ 5, they only demonstrate that Applicants have not fully met their burden of production at this pre-trial stage on the shallow

10

soils and steep slopes analysis under Regulations § 403. We therefore cannot enter summary judgment to Appellant on Questions 5 and 6.

However, this does not mean that Applicants are entitled to summary judgment on these same Questions. As discussed, Applicants' undisputed facts and supporting citations to the record fail to discuss at least two parts of the analysis required under Regulations § 403: emergency vehicle access and drainage issues. Section 403(B) requires us to examine emergency vehicle access, and we therefore cannot accept Applicants' assertion that we may ignore this issue. Regulations §§ 402, 403(B). Because Applicants have not convinced us that all material facts relative to Appellant's Questions 5 and 6 are undisputed, their renewed motion for summary judgment must be **DENIED**.

Though the foregoing disposes of the cross-motions for summary judgment, we now note several issues raised by Appellant in his summary judgment motion that relate to the scope of this appeal. Appellant notes that it is his belief that, first, Applicants have violated the terms of the WW Permit, and, second, that this permit was improperly issued. He argues that these issues prevent granting summary judgment and possibly should forestall our review on the merits. We note that issues related to any violation of the WW Permit or its issuance are not the subject of this appeal. We have not been made aware of any violation or appeal proceedings. We therefore decline to discuss the bearing that these hypothetical permitting issues may have on any aspect of this appeal, as any such discussion would be advisory. In re 232511 Invs., Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409, 417.

Appellant's motion also weaves several of his arguments in favor of altering or amending the January 2 Decision to resurrect Questions 1, 2, and 3 into his summary judgment motion on Questions 5 and 6. We refer him to our prior discussion in this Decision for our analysis of the impact of the boundary dispute on the present appeal. Section 403(B) and (C) contain no reference to boundaries. Therefore, to the extent Appellant offers the result of the boundary dispute in argument for summary judgment, such an argument must fail here.

Lastly, Appellant also seeks in limine relief preventing Applicants from referring to or offering the WW Permit at trial. Such a motion is intended to prevent potentially prejudicial evidence from being offered or referred to at trial before a court has the opportunity to review the evidence's admissibility. 75 Am. Jur. Trial 2d § 39. Appellant contends that because the WW Permit was not submitted to the DRB with the subdivision application, it must be excluded.

11

However, Appellant has made no argument that the permit is irrelevant, inadmissible, or that its probative value is outweighed by its prejudicial effect. See id. (noting that a court should examine these factors); and see V.R.E. 402 (noting that all relevant evidence is admissible, unless constitutional considerations, a statute, or the Rules of Evidence otherwise prohibit admission); see also V.R.E. 403 (which does not bar all "prejudicial" evidence, but only evidence that is deemed unfairly prejudicial). Appellant's Motion in Limine is therefore **DENIED** at this time. If the WW Permit is offered at trial, the Court will then examine its admissibility, based upon the manner in which it is offered.

Accordingly, for the forgoing reasons, it is **ORDERED** and **ADJUDGED** that Appellant's Motion to Reinstate Appeal Questions 1, 2, and 3 is **DENIED**. Both Applicants' and Appellant's Motions for Summary Judgment on Questions 5 and 6 are also **DENIED**, and consideration of those Questions will proceed to a merits hearing, scheduled now for August 4, 5, and (if necessary) 6, in the Windsor Superior Courthouse in Woodstock. A site visit will precede the first day of trial. Last, Appellant's Motion in Limine to prohibit reference to or offering of the WW Permit and the Willis Affidavit is also **DENIED**.

Done at Newfane, Vermont this 25th day of July, 2008.

_____
Thomas S. Durkin, Environmental Judge

12