STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| Town of Calais, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Docket No. 142-6-06 Vtec |
| | } | |
| Barbara Noordsij, | } | |
| Defendant. | } | |
| | } | |

Decision and Order on Motion for Reconsideration and to Alter

The Town of Calais brought an enforcement action against Defendant Barbara Noordsij, asserting violations of the conditions of her zoning permit for the construction of a barn. The Town is represented by Joseph S. McLean, Esq.; Defendant is represented by David J. Blythe, Esq.

Defendant had not appealed the Notice of Violation to the Development Review Board, and consequently was precluded from contesting the violation, either directly or indirectly. After this and other issues were resolved by summary judgment, an evidentiary hearing was held on the matter of an appropriate penalty, before Merideth Wright, Environmental Judge. The Town sought a penalty in the amount of $39,136.92 in its post-hearing memoranda. The Court issued a decision on the merits imposing a penalty for the violation of $24,695, or $43.63 per day over 566 days of violation. Defendant has moved for the Court to reconsider its decision and alter the amount of the penalty.

Relief pursuant to a motion to reconsider is "an extraordinary remedy that should be used sparingly." In re Bouldin Camp – Noble Road, No. 278-11-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Sept. 13, 2007) (Wright, J.) (quoting 11 Wright, Miller & Kane,

1

Federal Practice and Procedure: Civil 2d § 2810.0). A motion to reconsider should not be used to repeat arguments that have been raised and rejected by the court in the prior decision, id. at 1, nor should such a motion be used present evidence that could have been presented prior to judgment. Rubin v. Sterling Enters., 164 Vt. 582, 589 (1996); In re South Village Communities, LLC, No. 74-4-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. Sept. 14, 2006) (Durkin, J.) (citing 11 Wright, Miller & Kane, supra).

The limited functions of a motion to reconsider are "'to correct manifest errors of law or fact' on which the decision was based, to allow the moving party to present newly discovered or previously unavailable evidence, to prevent manifest injustice, or to respond to an intervening change in the controlling law." In re Vanishing Brook Subdivision, No. 223-10-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 10, 2008) (Wright, J.) (quoting 11 Wright, Miller & Kane, supra). The Court has reviewed its notes made during the trial, in connection with these motions, as the parties did not provide a transcript.

Defendant has requested that the Court reconsider its comment on the evidence that the $5,000 estimate provided by Defendant's contractor at trial as the avoided cost of storage of the partially-completed prefabricated building appeared to be low.[1] First, it is important to recognize that the Court's actual finding regarding the avoided cost of storage as of the time of the Notice of Violation was based on the $5,000 figure (plus interest for the duration of the violation), despite the contested comment, as no other evidence was presented by either party regarding the cost of storage. Town of Calais v. Noordsij, No. 142-6-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 29, 2008) (Wright, J.).

---

[1] The decision stated that the contractor's $5,000 "estimate appears to the Court to be a low estimate, as it has to cover eighteen or nineteen months rental of a storage location protected from the elements, as well as the transportation of the materials in both directions, and the labor of any dismantling of the portion of the structure that had been completed as of that time." Town of Calais v. Noordsij, No. 142-6-06 Vtec, slip op. at 5 (Vt. Envtl. Ct. Aug. 29, 2008) (Wright, J.).

The comment was supported by the evidence at trial, as Defendant's contractor referred to his estimate of $5,000 as what he had "guessed[2] off the top of [his] head," in response to a question regarding whether the steel frame could have been disassembled by unbolting it and taking it down. Several questions earlier, Defendant's contractor had testified that an alternative to continuing to construct the building after the Notice of Violation had issued would have been to have "dug it all out and trucked it to a warehouse somewhere, preferably heated." The $5,000 estimate therefore covered dismantling the partially constructed frame and may have included the time involved in trucking it to a warehouse, but it did not include the warehouse rental costs and, as the contractor testified on cross-examination, it did not include the equipment necessary to load the prefabricated pieces onto a truck and unload it at the warehouse.

It is also important to note that the $5,000 estimate did not represent the cost of installing the building in the correct, permitted location to begin with, nor the cost of installing it in the as-built location not then yet permitted. That is, it was not the cost of curing the violation so as to end up with the proposed building in its permitted location. Rather, it was the cost of putting the building in storage while a permit was applied for to place the building in the new nonconforming location.

Moreover, Defendant's own evidence also reflected that the cost of the work and materials necessary to have installed a slab foundation and to have moved the prefabricated structure in its originally-permitted location was $16,870, as shown on Defendant's own Exhibit O. While Defendant presented this evidence to argue that it was not practical to move the structure to its originally-permitted location, it is that figure that was the true avoided cost of compliance as of the date of the Notice of Violation. However, the Court did not measure this component of the penalty by this

---

[2] All quotations are approximate as they are taken from the Court's notes, not from a transcript. On cross-examination, the contractor also testified to the effect that he had "no confidence in that number."

3

larger amount, even though it was from Defendant's own evidence, because the DRB eventually <u>did</u> grant the permit in the as-built location.

Therefore the Court looked to the Town's cost of enforcement as a fairer measure of the appropriate penalty, without adding to it Defendant's large avoided cost of compliance. The Court determined that, for the purposes of deterrence, it was not necessary to impose **both** the avoided cost of compliance **and** the Town's enforcement costs as the Town had requested, but that essentially the two could run concurrently, with the avoided cost of compliance being subsumed within the enforcement cost amount.

The Court calculated the period of violation as 566 days, commencing seven days after the Notice of Violation and continuing until the permit was issued by the DRB authorizing the barn to remain in the location in which it was constructed. This method of calculating the violation period is supported by the language of 24 V.S.A. § 4451(a), which indicates that the violation period commences seven days after the Notice of Violation issues,[3] and states that "[e]ach day that a violation is continued shall constitute a separate offense." Defendant's barn remained in an unpermitted location for 566 days after the Notice of Violation's seven-day grace period, and therefore the period of violation was correctly calculated by the Court to be 566 days. The fact that the violation period could have been shorter had the DRB issued the as-built permit sooner does not shift the responsibility for the duration of the violation to the DRB. Rather, the violation period also could have been shorter had the Defendant chosen to suspend the violation by dismantling and moving the prefabricated structure into

---

[3] "No action may be brought under this section unless the alleged offender has had at least seven days' warning notice by certified mail . . . . The seven day warning notice shall state that a violation exists, that the alleged offender has an opportunity to cure the violation within the seven days, and that the alleged offender will not be entitled to additional warning notice for a violation occurring after the seven days." 24 V.S.A. § 4451(a).

4

storage or to the originally-permitted location, during the litigation and the application period, rather than continuing to complete it in place. These alternatives are not before the Court, and, in any event, the amount of penalty was calculated by the Town's enforcement costs, which was simply divided into the number of days of violation to yield a daily penalty amount.[4] Defendant similarly requests that the Court alter the penalty to reflect only the costs incurred by the Town during the first 49 days of the violation period, arguing that the remaining 517 days of the violation period resulted from the DRB's interpretation of the zoning bylaws as not allowing it to consider an as-built application.[5]

However, it is not within the Court's discretion to impose a penalty for only a portion of the violation period. Town of Barnard v. Rhoades, No. 2001-211, slip op. at 2 (Vt. Jan. 30, 2002) (unpublished mem.) (citing Town of Sherburne v. Carpenter, 155 Vt. 126, 133 (1990)). "As long as [D]efendant has the benefit of a zoning ordinance violation, the statute[6] requires that [s]he pay a daily fine." Carpenter, 155 Vt. at 133. All that the Court has discretion to alter is the daily amount.

Further, Defendant's request conflates the concept of the violation period with the concept of a penalty based on Plaintiff Town's cost of enforcement. The Court is permitted to base the penalty on Plaintiff Town's enforcement costs. City of St. Albans

---

[4] Even if the duration of the violation is reduced by the approximately six months of litigation time attributable to the Court's resolution of the issue of first impression of whether an as-built permit could be sought in these circumstances, the division of the Town's litigation costs by the resulting 386 days still yields a daily penalty amount within the statutory limit.

[5] In its written decision issued 49 days after the Notice of Violation's seven-day grace period, the DRB had concluded that it was not authorized to issue an as-built permit for the Defendant's barn. Defendant's barn remained in the unpermitted location for an additional 517 days while this issue was resolved on appeal, and the as-built permit was ruled on and ultimately issued by the DRB.

[6] The statute discussed in this case, 24 V.S.A. § 4444(a), was recodified in substantially the same language at 24 V.S.A. § 4451(a).

v. Hayford, 2008 VT 36, ¶¶ 17–18 (mem.); Town of Hinesburg v. Dunkling, 167 Vt. 514, 528–29 (1998). These costs may include enforcement litigation costs incurred after a violation is remedied. Within the statutory limit of "not more than $100.00" per day of violation, 24 V.S.A. § 4451(a), "[t]he court has the discretion to determine the amount" of the penalty under this statute. Hayford, 2008 VT 36, ¶ 17; see also Dunkling, 167 Vt. at 529 ("[D]etermining the amount of the fine with regard to the Town's attorney's fees and costs was reasonable.").

The penalty imposed by the Court, $43.63 per day for 566 days, is less than half of the statutory limit, and reflects the appropriate enforcement costs incurred by the Town and recognizes the avoided costs of the Defendant. Not only does it not duplicate any of the penalty factors, this amount imposes no additional penalty reflecting the avoided costs, but is only measured by the Town's enforcement costs, which are sufficient under the circumstances of this case. Accordingly, the Court, after reexamining the evidence and the penalty considerations, declines to alter the penalty imposed.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Defendant's Motion for Reconsideration and to Alter is DENIED. Defendant and the Town may develop a payment schedule or may apply to the court for such a schedule, in light of current economic factors, including any request for waiver or reduction of the statutory interest rate from the date of the August 29, 2008 decision to the date of the present order.

Done at Berlin, Vermont, this 9th day of February, 2009.

_____
Merideth Wright
Environmental Judge

6